In re Estate of MATHILDA A. LARGUE; MARTHA N. MARTIN et al., Appellants, v. W. B. THOMPSON et al.

**Division One, February 29, 1916.**

1. **SPECIFIC LEGACIES: Bank Stock: Use of Word My.** When a specific number of shares of stock in a named bank is by the will given to a named legatee, whether the word "stock" is or is not preceded by the word "my" or a similar expression, and the will upon its face fairly discloses an intention on the part of the testator to make a specific bequest, the legacy is specific, and not general.

2. ———: ———: **Manifestation of Intention: Gift to Trustee: Ademption.** And the testatrix's intention to make specific legacies is strengthened by the fact (1) that at the time she made her will and gave a certain number of shares of the stock of a named bank to each of a large number of legatees, she owned the aggregate number of shares in said bank, and (2) by the fact that she owned and was in possession of the same shares of stock at the time of her death, and (3) is made

In re Estate of Largue.

manifest by the fact that by one item of the will she gave 46 shares of stock in said bank to a named trustee, to be kept for the use of a named legatee during her life, and at her death to go in equal parts to five other named persons, and (4) by the fact that there is no intimation in the will that testatrix intended to adeem any portion of said stock, or to require her executors to go into the market and buy stock of any kind.

3. ————: ————: **Identification.** If the shares of stock are for the same amount in the same corporation, and all are alike and all are owned by testatrix, they are as fully separated and identified by being bequeathed in different amounts to each of a large number of legatees, as they would be were the aggregate number given to one person, or were they given in common by one clause to all the legatees.

4. ————: **Dividends.** All dividends on corporate stock specifically bequeathed belong to the specific legatee, and not to the residuary legatee.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

REVERSED AND REMANDED (*with directions*).

*J. Lionberger Davis* for appellants.

(1) The intent of the testatrix must govern if it clearly appears from the language of the will. Sec. 583, R. S. 1909; Finley v. King, 3 Pet. 346; Sanitarium v. McCune, 112 Mo. App. 337. (2) The law was then and is now that the bequests of shares of stock which were owned by the testatrix are specific legacies. Waters v. Hatch, 181 Mo. 262; Sanitarium v. McCune, 112 Mo. App. 332; White v. Winchester, 6 Pick. (Mass.) 48; Drake v. True, 72 N. H. 322; Lewis v. Sedgwick, 223 Ill. 213; Trust Co. v. Powell, 29 Ind. App. 494. (3) All dividends declared on stock specifically bequeathed, i. e., on specific legacies, belong to the specific legatees, and not to the residuary legatee. This proposition of law was conceded, hence no authorities are cited.

*Schnurmacher & Rassieur* for respondent.

(1) Since specific legacies interfere with a just and uniform settlement of an estate as one whole, courts lean against pronouncing legacies specific, except in the clearest case; and in case of doubt, will construe a legacy as general rather than as specific. Schouler on Wills, p. 522; Dryden v. Owings, 49 Md. 356; Morton v. Murrell, 68 Ga. 141; Giddings v. Seward, 16 N. Y. 365; Balliet's Appeal, 14 Pa. St. 461; Cogdell v. Widow, 3 Desaus (S. C.), 373; Smith v. Lampton, 8 Dana (Ky.), 69. (2) The legacies to petitioners called for no particular shares or particular certificates of stock; each legacy could have been satisfied by the delivery of any shares or certificates of the requisite number; they were in no wise identified or distinguished from the other shares of the same stock and were therefore general, and not specific, legacies. Woerner on Am. Law of Administration, sec. 444; Roper on Legacies, 157; Tifft v. Porter, 8 N. Y. 516; Sponsler's Appeal, 107 Pa. 95; In re Snyder, 217 Pa. St. 71; Johnson v. Goss, 128 Mass. 433; Re Eckfeldt's Est., 7 Wkly. Notes of Cases (Pa.) 19; Osborne v. McAlpine, 4 Redf. (N. Y. Surr.) 1; Davis v. Cain, 1 Ired. Eq. 304; Sibley v. Perry, 7 Ves. 524; Robinson v. Addison, 2 Beav. 515. (3) The mere fact that a testator owns, in the aggregate, exactly the number of shares of stock disposed of by his will, does not, of itself, make the legacies specific. Woerner on Am. Law of Administration, sec. 444; Tifft v. Porter, 8 N. Y. 516; Evans v. Hunter, 86 Ia. 413; Gilmer v. Gilmer, 42 Ala. 9; Dryden v. Owings, 49 Md. 356; Shethar v. Sherman, 65 How. Pr. 9; Ives v. Camby, 48 Fed. 718; Townsend v. Martin, 7 Hare, 471; Davis v. Cain, 1 Ired. Eq. (N. C.) 304; Re Tyler, 65 L. T. N. S. 367. (4) Dividends on specific legacies of stock follow the stock; dividends on general legacies of stock, go to the residue. Tifft v. Porter, 8 N. Y. 516;

Dryden v. Owings, 49 Md. 356; Re Eckfeldt's Estate, 7 Wkly. Notes of Cases (Pa.) 19.

RAILEY, C.—On January 11, 1912, appellants, Martha Norris Martin, Elizabeth Norris Nelson, Jennie Norris Angloch, Mary M. Norris, Mary M. May and Albert W. Wallace, filed in the probate court of the city of St. Louis their petition, against respondents, as executors of the estate of Mathilda A. Largue, deceased, reciting therein that they were the respective owners of the shares of stock mentioned in paragraphs three, four and seven of the will of Mrs. Largue, hereafter set out in *full (318 shares), and alleging that since her death on October 12, 1909, all dividends declared by the National Bank of Commerce in St. Louis, Missouri, on said 318 shares of stock, have been paid to respondents as executors aforesaid, and that no part of same has been distributed to appellants; that said dividends amount to $27 on each and every share of said stock.

It is further alleged that said executors have on hand sufficient sums to pay all debts, legacies and expenses of administration, and the aggregate amount of dividends herein prayed for; that appellants have paid their collateral inheritance taxes and are entitled to the dividends aforesaid.

The petition asked the court to make an order on said executors, requiring them to pay over to appellants the dividends aforesaid.

Upon a hearing in the probate court, the latter found against appellants, and held that the bequests of the 318 shares of stock aforesaid were *general* and not *specific* bequests. Appellants appealed to the circuit court aforesaid, where the cause was tried anew. The will of Mathilda A. Largue was read in evidence, and is in words and figures following, to-wit:

"Know All Men by These Presents, That I, Mathilda A. Largue, of the city of Saint Louis, Mis-

souri, being of sound and disposing mind, do hereby make, declare and publish this to be my last will and testament, hereby revoking all former wills.

"First. I direct my executors to pay all just debts against my estate.

"Second. I give and bequeath to my brother, William R. Anderson, of Denver, Colorado, 100 shares of stock of the National Bank of Commerce in Saint Louis.

"Third. I give and bequeath to my sister, Mary M. May, of Beaver Falls, Pa., 137 shares of stock of the National Bank of Commerce in Saint Louis.

"Fourth. I give and bequeath 136 shares of stock of the National Bank of Commerce in Saint Louis to Martha Norris Martin, Elizabeth Norris Nelson, Mary M. Norris, and Jennie Morris Angloch, daughters of my late sister, Katherine Norris, share and share alike.

"Fifth. I give and bequeath to William A. Brandenburger, trustee, 46 shares of stock of the National Bank of Commerce in Saint Louis, in trust, however, for the following uses and purposes: The said trustee or his successor in this trust shall keep said shares of stock and collect such dividends as may be paid thereon and pay the same as they are collected to Melinda Wallace during the term of her natural life, and at the death of Melinda Wallace I give and bequeath said 46 shares of stock to Linnie Brandenburger, Jessie Verdier, Edith Taylor, Blanch Taylor and Grace Mortland, share and share alike.

"Sixth. I give and bequeath 46 shares of stock of the National Bank of Commerce in Saint Louis to William Ramsey, Harry Ramsey, Sadie Ferree, Hallie Ramsey, Lynn Ramsey and George Ramsey of Pittsburgh, Pa., share and share alike.

"Seventh. I give and bequeath to Albert W. Wallace of Allegheny, Pa., 45 shares of stock of the National Bank of Commerce in Saint Louis.

"Eighth. I give and bequeath to Mrs. Sarah A. Walker of Philadelphia, Pa., one bond of the Merchants Bridge Company of Saint Louis of the face value of $1000.

"Ninth. I give and bequeath to Mrs. Alma E. Armstrong of Atlanta, Ga., one bond of the Merchants Bridge Company of Saint Louis of the face value of $1000.

"Tenth. All the rest and residue of my estate, real, personal and mixed, of whatever kind and wheresoever situate, including my residence, known as 3840 Lindell Boulevard, and contents, I give, devise and bequeath to my beloved niece, Mathilda A. Puller.

"Eleventh. I nominate and appoint Edwin S. Puller and William B. Thompson or survivor, executor of this will and request that they give bond equal to the value of my estate, excluding realty.

"Twelfth. In the event that any legatee, devisee or executor contests the validity of this will, either directly or indirectly, I do hereby revoke the legation, devise or appointment as executor of said legatee, devisee or executor so contesting this will.

"In Testimony Whereof, I, the said Mathilda A. Largue, have hereunto set my hand and seal this 6th day of July, 1909.

"Mathilda A. Largue. (seal)"

A written stipulation was entered into in the court below, which, without signatures, reads as follows:

"It is hereby stipulated by and between Martha Norris Martin, Elizabeth Norris Nelson, Jennie Norris Angloch, Mary M. Norris, Mary M. May and Albert W. Wallace, legatees under the will of Mathilda A. Largue, by their attorney, J. Lionberger Davis, William B. Thompson and Edwin S. Puller, executors of the estate of Mathilda A. Largue, and Mathilda A. Puller, by her attorneys, Schnurmacher & Rassieur,

that the said Mathilda A. Largue, at the time of the execution of her said will, to-wit, on July 6, 1909, and at the time of her death, was the owner of five hundred and ten shares of the capital stock of the National Bank of Commerce in St. Louis.''

It was further stipulated by counsel, that the National Bank of Commerce of St. Louis, declared a dividend of $27 per share, on each of the 318 shares aforesaid; that the same was received by said executors, and that the aggregate amount of dividends so declared on the shares belonging to plaintiffs was, and is, $8586.

After argument, the case was taken under advisement, and on March 17, 1913, the circuit court found the issues in favor of defendants, and entered judgment generally against the plaintiffs.

Appellants in due time filed a motion for a new trial, which was overruled, and the cause duly appealed to this court.

I.. The question at issue involves the construction of Mrs. Largue's will heretofore set out. It is dated July 6, 1909, and executed in St. Louis,

Specific Legacy. Missouri. It is conceded that, at the date of its execution, the above testatrix was the owner and in possession of 510 *shares of the capital stock of the National Bank of Commerce, St. Louis, Missouri.* It is conceded, that *testatrix was the owner and in possession of 510 shares of said stock at the time of her death, on October 9,* 1909. By the provisions of said will, testatrix bequeathed to the legatees named therein 510 shares of stock in the National Bank of Commerce aforesaid. She bequeathed to appellants 318 shares of stock in said bank, as shown in paragraphs three, four and seven, of the will aforesaid. It does not appear from either the will, or the record herein, that testatrix owned any *more* than 510 shares of stock in said bank.

It appears by stipulation "that the amount of dividends declared by the National Bank of Commerce in St. Louis on each and every share of the capital stock of said bank, which was bequeathed by the will of Mathilda A. Largue, was $27 per share, and that that amount was received by the defendants as executors of said will, and was and is retained by said executors and defendants; and that the aggregate amount of dividends so declared on the shares belonging to plaintiffs was and is $8586."

Counsel for respondents in their brief, with commendable frankness, state the issues involved, as follows:

"The testatrix did intend to dispose of the five hundred and ten shares of stock she owned; but the true question is, did she, by the language she used in expressing her last wishes, dispose of them in such a way that, as a matter of law, they amount to specific legacies or general legacies?"

As said by the New York Court of Appeals, in Cammann v. Bailey, 210 N. Y. l. c. 30:

"Rules for the construction of wills are for the sole purpose of ascertaining the intention of the testator, and if the intention is clear and manifest, it must control, regardless of all rules that have been formed for the purpose of determining their construction."

In Roper on Legacies (4 Ed.), chapter 3, section 1, page 190, a *specific* bequest is defined as follows:

" 'The bequest of a particular thing or money specified and distinguished from all others of the same kind, as of a horse, a piece of plate, money in a purse, stock in the public funds, a security for money, which would immediately vest with the assent of the executor.' "

The same author, on page 203 of the same volume, says:

"From the definition of a regular specific legacy in the beginning of the chapter, it is obvious that *stock* or *government annuities* or *shares* in public companies may be specifically bequeathed; but in order to make the bequests specific, the intention that they should be so, must be clear, otherwise the bequests will be general."

It is insisted by respondents that the legacies to appellants called for no particular shares or particular certificates of stock; that each legacy could have been satisfied by the delivery of any shares or certificates of the requisite number; that they were in nowise identified or distinguished from the other shares of the same stock and were therefore general, and not specific legacies. The following authorities are relied upon, in support of the foregoing contention: Woerner on Am. Law of Administration, sec. 444; Roper on Legacies, 157, and cases cited; Tifft v. Porter, 8 N. Y. 516; Sponsler's Appeal, 107 Pa. 95; Snyder's Estate, 217 Pa. St. 71; Johnson v. Goss, 128 Mass. 433; Eckfeldt's Estate, 7 Weekly Notes of Cases (Pa.), 19; Osborne v. McAlpine, 4 Redfield (N. Y. Sur.), 1; Davis v. Cain's Exr., 1 Iredell Eq. (N. C.) 304; Sibley v. Perry, 7 Ves. 524; Robinson v. Addison, 2 Beavan's Reports, 515; Evans v. Hunter, 86 Iowa, 413; Gilmer's Legatees v. Gilmer's Executors, 42 Ala. 9; Dryden, Exr., v. Owings, 49 Md. 356; Palmer v. Estate of Palmer, 106 Me. 25.

Tifft v. Porter, supra, seems to be the leading authority relied upon, and follows the English rule upon the question involved. In the Tifft case it is said:

"In those cases in which legacies of stocks or shares in public funds have been held to be specific, some expression has been found from which an intention to make the bequest of the particular shares of stock could be inferred. Where, for instance, the

testator has used such language as, 'my shares,' or any other equivalent designation, it has been held sufficient. But the mere possession by the testator at the date of his will of stock of equal or larger amount than the legacy, will not of itself make the bequest specific.''

It is practically conceded in all the authorities cited supra, that if the will in controversy had said ''my stock,'' or ''the stock which I own,'' or had used some similar expression, the legacies granted to appellants would have been *specific*. It is admitted in the stipulation on file ''that the said Mathilda A. Largue, at the time of the execution of her said will, to-wit, on July 6, 1909, and at the time of her *death*, was the owner of five hundred and ten shares of the capital stock of the National Bank of Commerce in St. Louis.'' It is conceded by respondents' counsel in their brief, that: *''The testatrix did intend to dispose of the five hundred and ten shares of stock she owned.''* It thus conclusively appears that she was disposing of her *own* stock, and not some other, which might be bought with her funds after her death.

The third paragraph of the will with the word ''my'' inserted in front of ''stock,'' would have read as follows:

''Third. I give and bequeath to my sister, Mary M. May, of Beaver Falls, Pa., 137 shares of 'my' stock of the National Bank of Commerce in Saint Louis.''

Under the authorities heretofore cited, if each of the bequests had been written as the above, by inserting ''my'' before the word ''stock,'' it would have characterized the respective legacies of appellants, as *specific*, instead of general. If testator understood she was doing the very thing which the use of ''my'' before ''stock'' would imply, in framing said legacies, then her *intention*, if carried out, would convey to each of said legatees a specific bequest.

267 Mo. 8

Many of the courts of last resort in this country have broken away from the arbitrary and iron-clad English rule aforesaid, and construe legacies as *specific,* when bank stock or other stock is disposed of, without the use of "my" or similar expressions, where the will upon its face, fairly discloses the intention of testator to make a specific bequest. In support of this proposition, we call attention to the following authorities: Jewell v. Appolonio, 75 N. H. 317; Drake v. True, 72 N. H. 322; Ferreck's Estate, 241 Pa. St. 340; Lewis v. Sedgwick, 223 Ill. 213; Gardner v. Viall, 36 R. I. l. c. 440; In re Lyle, 85 N. Y. Supp. 290; Gordon v. James, 86 Miss. l. c. 746-748; In re Zeile, 74 Cal. l. c. 130; New Albany Trust Co. v. Powell, 29 Ind. App. 494; White v. Winchester, 6 Pick. (Mass.) 48; Metcalf v. Framingham Parish, 128 Mass. 370; Harvard Unitarian Society v. Tufts, 151 Mass. l. c. 78-9; Thayer v. Paulding, 200 Mass. 98; Kunkel v. Macgill, 56 Md. l. c. 126; Norris v. Exrs. of Thomson, 16 N. J. Eq. 542; School District No. 1 v. International Trust Co., 149 Pac. (Colo.) 620; Douglass v. Douglass, 13 D. C. App. l. c. 29; Waters v. Hatch, 181 Mo. 262.

In the foregoing cases, bank stock and other stock were disposed of by testators under facts similar to those in the case at bar, and the legacies were declared *specific* bequests, without the use of the word "my" or words of similar import.

Recurring to the provisions of the will under consideration, it appears from the fifth paragraph of same that testatrix was not only *intending* to dispose of her *own* stock, but created an active trust, by appointing Wm. A. Brandenburger, trustee, as to 46 shares of said bank stock, and devolved upon him the duty of holding said shares of stock. It required him to collect the dividends thereon and pay the same to Melinda Wallace, during her natural life. She then

gave said 46 shares, at the death of Melinda Wallace, to those named, share and share alike.

There is nothing in the record to indicate that testatrix owned any other bank stock, aside from said 510 shares disposed of in the will. There is not the slightest intimation on the face of the will, that she intended to *adeem* any portion of said stock, or to have her executors go into the market and buy stock of *any* kind.

Keeping in mind the obligation resting upon us, to ascertain and carry out the intention of testatrix, we cannot escape the conviction, that Mrs. Largue fully intended that these appellants should have and hold as specific bequests, the bank stock left them by the will, as well as the dividends paid thereon to the executors of said estate.

II. It is suggested in the brief of respondents that, if all the stock mentioned in the will had been bequeathed to *one* legatee, or to *several* legatees *in common,* the bequest might be considered *specific,* under the ruling of this court in Waters v. Hatch, 181 Mo. 262. In the latter case, paragraph 2 of the will construed reads as follows:

Identification of Stock.

" 'I give and bequeath to my daughter, Mrs. Sarah M. Vernon, of Des Moines, Iowa, sixty shares of stock of the Carthage National Bank of Carthage, Missouri.' "

Judge MARSHALL, speaking for this division in which all concurred, on page 288, said:

"The second clause of the will separates these shares from the balance of the estate and bequeaths them to Mrs. Vernon. It would be hard to conceive of a more specific legacy."

The conclusion reached in the Hatch case is fully sustained by many of the well considered cases heretofore cited.

We are at a loss to understand why the disposition of 60 shares of stock to one legatee, when testator had no more, is any more *specific* than if he had bequeathed 510 shares, being all he owned, to five or more persons, giving each a different number of shares from the other. In each instance, the testator bequeaths all the stock he owns. Each share of stock is of the same value as every other share of the same stock. The 60 shares in the Hatch case could no more be separated and identified than the 510 shares of stock in the case at bar. We see no reason for departing from the rule promulgated in the Hatch case, and hence hold that the principles there enunciated, in respect to foregoing matters, stamp the legacies aforesaid, of the will in controversy, as *specific,* rather than general bequests.

III. When testatrix executed the will under consideration in 1909, she was authorized by the ruling of this court in the Hatch case to dispose of her 510 shares of stock in the National Bank of Commerce, as she did in the several paragraphs of her will. She was dealing with her own bank stock, without any apparent intention of *adeeming* same or any portion thereof. It made no difference to her *which* particular shares of stock each legatee received, as they were all alike, and all of the same value.

*Ademption.*

If she had sold in her lifetime the 510 shares of stock in said bank to the legatees named in her will, and had received pay therefor, each purchaser under said sale, in case she refused to deliver his stock, could have maintained an action in replevin against her, for his aliquot part of the stock, as it was all alike, of the same value, and not separated. [Kaufmann v. Schilling, 58 Mo. 218; Groff v. Belche, 62 Mo. 400; Lead Co. v. White, 106 Mo. App. l. c. 235; Hamilton v. Clark, 25 Mo. App. l. c. 438; Chapman v. Shepard, 39 Conn. 413;

Rust Land & Lumber Co. v. Isom, 70 Ark. 99; Gardner v. Dutch, 9 Mass. 407; Kimberly v. Patchin, 19 N. Y. 330; Pleasants v. Pendleton, 6 Randolph (Va.), 473.]

In view of the law upon this subject, it would be illogical to hold that the bank stock given each legatee under the will was not sufficiently described and identified, when the will in its entirety, in connection with the clear intention of testatrix, is taken into consideration.

IV. On the facts disclosed by the record, we hold that the legacies given appellants in paragraphs three, four and seven of the will in controversy, are specific bequests, and that appellants are legally entitled to $8586 received by the executors as dividends on the 318 shares of stock aforesaid.

The judgment below is accordingly reversed, and the cause remanded with directions to the trial court to dispose of the case in conformity to the views here expressed.

*Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur; *Blair, J.,* in the result.