Joseph W. Cribb, S.
This is an application for a construction of the will of Margaret H. Tracy who died on or about the 8th day of December, 1959, leaving a last will and testament dated the 12th day of November, 1954, which was duly admitted to probate in this court on the 19th day of January, 1960, and by the terms of which she exercised the power of appointment which she was given under “ Paragraph Fifth ” of the last will and testament of her husband, Edward J. Tracy, which reads as follows: “ fifth: And I do further direct my said executor, upon the decease of my said wife, to dispose of all unexpended and unused income and principal as it may be directed to do under and by the last Will of my said wife. I hereby empower my said wife to make such directions by her last Will for disposition of the unexpended income and corpus of said trust fund remaining at her decease as she may desire.”
Mrs. Tracy’s will was carefully prepared, and “Paragraph Thirty-Third” of the same reads in part as follows: “ This Will has been carefully planned by me and it is drawn in accordance with the instructions set forth in the Will of my late husband, Edward J. Tracy, in that I was to dispose of all the unexpended and unused principal and interest which might remain of his estate at my death, under my Will. I, of course, have also added my savings and estate and intend to dispose of the same along with that of my said husband. * * * As I am
still confined in the hospital and probably will never be able to return to my home on South Main Street in Canandaigua, New York, I have arranged to sell and dispose of my home. In view of the sale of my house and other circumstances, I am making this Will and revoking all prior Wills and Codicils.”
The property concerned, of ivliich a construction of Mrs. Tracy’s will is requested, consists of stock in the Canandaigua National Bank and Trust Company, which has been held by it as a part of the trust created for Mrs. Tracy pursuant to the *721 will of her husband. At the time of his death he was the owner of 40 shares of Canandaigua National Bank and Trust Company stock, and this stock became a part of the corpus of the trust over which Mrs. Tracy was given a power of appointment.
Subsequent to Mr. Tracy’s death and subsequent to the date of execution of Mrs. Tracy’s will a 100% stock dividend was declared with the result that the said trustee became the holder of 80 shares of the Canandaigua National Bank and Trust Company stock instead of the original 40 received by it. This stock dividend became effective on or about August 7, 1957, approximately three years subsequent to the date of Mrs. Tracy’s will which is in question.
The testatrix, after making numerous monetary bequests, made the following bequests of stock in the Canandaigua National Bank and Trust Company:
“ eighth : I give and bequeath to my niece, ltlltf, gosselin, now residing at 39351/2 Tangerine Avenue, St. Petersburg, Florida, the sum of ten thousand dollars ($10000.00), and nine (9) shares of stock of The Canandaigua National Bank and Trust Company, to be hers, her distributees, absolutely and forever.” * * *
‘ ‘ eleventh : I give and bequeath to my niece, maud traoy van norman, now residing at Shortsville, New York, the sum of five thousand dollars ($5000.00), and nine (9) shares of stock of The Canandaigua National Bank and Trust Company, to be hers, her distributees, absolutely and forever.” * * *
“ fourteenth: I give and bequeath to my nephew, lewis hoffman, now residing at Canandaigua, New York, the sum of one thousand dollars ($1000.00), and two (2) shares of stock of The Canandaigua National Bank and Trust Company, to be his, his distributees, absolutely and forever. ” * * *
‘ ‘ twenty-third : I give and bequeath to my friend, jane waldorf, now residing at Canandaigua, New York, the sum of five hundred dollars ($500.00), and twenty (20) shares of stock of The Canandaigua National Bank and Trust Company, to be hers, her distributees, absolutely and forever.”
The will further makes disposition of the residuary estate, directs payment of estate taxes from the residue and provides for the appointment of executors. The pertinent portion of “ Paragraph thirty-second ” dealing with the payment of estate taxes reads as follows:
‘ ‘ thirty-second : * * * I hereby direct that all transfer, inheritance and estate taxes, Federal and State, shall be paid out of the residue of my estate remaining after the payment of all specific legacies, bequests and devises; and that all bene *722 ficiaries under this, my Last Will and Testament, except residuary beneficiaries, shall receive specific legacies, bequests and devises free and exempt from any and all tax payments.” (Emphasis mine.)
Subsequent to the death of the testatrix certain cash dividends have been paid upon the shares of the said Canandaigua National Bank and Trust Company stock resulting in the following questions being raised upon this application for a construction:
(a) Were the bequests of the 40 shares of the common stock of The Canandaigua National Bank and Trust Company of Canandaigua, New York, contained in paragraphs “eighth’’, 1 ‘ ELEVENTH ”, “ FOURTEENTH ’ ’ and ‘ ‘ TWENTY-THIRD ’ ’ of the will of the said Margaret H. Tracy, general or specific bequests ?
(b) In the event that it should be determined that the bequests in paragraphs ‘ ‘ eighth ”, “ eleventh ”, “ fourteenth ’ ’ and ‘ ‘ twenty-third ’ ’ are specific bequests of the stock owned by the husband of testatrix, over which she had the power of appointment at the time of the making of her will, do the shares issued as a stock dividend on or about August 7, 1957, follow the original shares and go to the legatees mentioned in paragraphs “eighth”, “eleventh”, “fourteenth” and “ twenty-third ” of testatrix’ will?
(c) What disposition is to be made of the cash dividends declared on the stock of the Canandaigua National Bank and Trust Company subsequent to the death of the testatrix?
This case is made the more interesting by virtue of the fact that this testatrix was not disposing of securities owned by her but rather owned by the trust established by her deceased husband and over which she had a power of disposition pursuant to a power of appointment.
As a general rule, bequests of stock are considered to he general bequests, unless it can be determined from the will and from the circumstances existing at the time of the execution of the will, that the testator intended to bequeath certain specific shares of stock. (Matter of Maher, 5 Misc 2d 135, 138.)
I conclude that the bequests were intended to be specific although in this case I am cognizant of the fact that certain indicia of intention are lacking, such as failure of testatrix to mention stock bequeathed as “my” shares of stock or to identify the stock as now being owned by me. In fact, however, testatrix could not so designate the stock in this case as it was not hers or owned by her but rather was stock formerly owned by her husband and held in a trust created by him over which she merely had the power of disposition by appointment in her *723 will. It is to "be noted, however, as seen from a reading of 1 ‘ Par-graph thirty-third ’ ’ of her will that she intended to dispose of all the unexpended principal and interest which might remain in the trust at the time of her death. A reading of her will also indicates that due to her hospital confinement and age she doubted if she would ever return home with the further result that she undoubtedly was in no physical condition at least to execute a new will and double the number of shares of said bank stock to each of the legatees she remembered in the will presently under construction.
Furthermore, as noted from the appropriate section of the will relative to payment of inheritance taxes, she recites that all beneficiaries, under her will except residuary beneficiaries, shall receive specific legacies, bequests and devises free from all tax payments.
In other cases involving disposition of bank stock or stock in closely held corporations, the courts have held such bequests to be specific under similar circumstances, especially where the stocks concerned are not readily purchased or sold generally by the public through the stock exchange. (Matter of Maher, supra; Matter of Security Trust Co., 221 N. Y. 213.)
Here, Mr. Tracy, who had been the owner of the stock in question, was for many years a director of the Canandaigua National Bank and Trust Company, had been intimately acquainted with its management and zealously guarded his stock interest in the bank. The Canandaigua National Bank and Trust Company stock is not easily obtainable and is not dealt in through the stock exchange, but is relatively closely held and largely locally owned.
In any event I conclude the gift of these shares of stock was specific. In the construction of wills, the cardinal rule is to carry out the intention of the testator as derived from the will. (Matter of Hayes, 263 N. Y. 219; Matter of Security Trust Co., 221 N. Y. 213, 219.) A very slight indication of an intention to give shares in testator’s ownership at the time of the making of a will is sufficient to make the legacy specific. (Matter of Security Trust Co., supra; Matter of Davis, 184 Misc. 952.) It is not necessary that the word “ my ” stock be used in order to make the legacy specific. (Matter of Security Trust Co., supra; Matter of Hicks, 272 App. Div. 594.)
I have found no similar case involving such bequests by one exercising a power of appointment; however, I see no good reason why such a disposition of stock by a middleman, so to speak, should alter the conclusion that the bequests are specific.
*724 In view of the above holding that the bequests of these shares of stock are specific bequests, 1 further conclude that the stock dividend during the year 1957 follows the original shares and goes to the respective legatees.
I am not unmindful of the fact that stock dividends, as distinguished from stock splits, have been held not to be included in the legacy in some instances. (Matter of Brann, 219 N. Y. 263; Matter of Howe, 15 A D 2d 396.) Such cannot be included unless there is some evidence of testamentary intent to include it. In the Brann and Howe cases the testator had executed a codicil subsequent to the stock dividend declaration but had not increased the number of shares to be distributed, thus indicating an intention that they should not be included. In the instant case no codicil had been executed, and testatrix had evidenced an intent to dispose of all her husband’s estate over which she had the power of appointment.
Thus it seems immaterial in the instant case that the resolutions adopted by the stockholders and directors of the Canandaigua National Bank on August 7, 1957, referred to the action taken as a 100% stock dividend. The number of shares were increased from 2,500 to 5,000 and the par value remained the same at 100. The officers were authorized to transfer $100,000 from surplus and $150,000 from undivided profits thereby increasing the common stock by $250,000. Those learned in the law may see a monumental difference between a two for one stock split and a 100% stock dividend, but to the average investor there is no such marked difference. Proportionate ownership in the business remained the same and the aggregate book value of shares held remained the same. Under such circumstances how could Mrs. Tracy, a woman of advanced age and poor health, and who had by her will stated she intended to dispose of all “ unexpended and unused principal ” in the trust, now be held not to have intended disposition of the additional shares?
The stock in question constituted a part of the corpus of a trust, and, as previously noted, was not owned outright by testatrix. Section 17-a of the Personal Property Law relating to stock dividends declared relative to stock already held in a trust provides that, unless otherwise provided in a will, “ any dividend which shall be payable in the stock of the corporation * * * shall be principal.” (Matter of Ryan, 294 N. Y. 85, 98.) The additional shares issued in this case became part of the trust principal, and obviously testatrix intended to dispose of all such trust principal by duly exercising her power of appointment.
*725 Since the stock is held to be specifically bequeathed, the cash dividends declared on the stock since the date of death of the testatrix must of necessity go to the legatees mentioned in paragraphs “eighth”, “eleventh”, “ fourteenth ” and “ twenty-third ” of the will in proportion to the number of shares bequeathed as hereinabove determined. (Matter of Maher, supra; Matter of Security Trust Co., supra.) Let a decree be submitted accordingly.